Good morning, and may it please the Court. Peter Afrasiabi of the Chapman University School of Law, on behalf of Petitioner. Your Honors, this Court should reverse for two reasons, the procedural due process and substantive due process arguments outlined in the brief. Now, before bottom-lining to those arguments, I wanted to address one issue which is not in our briefs and which, in preparing for today, I noticed had been obliquely raised in the government's brief in a footnote. And that's an issue of what appeared to be waiver or exhaustion of the arguments. It was in footnote 6 of the government's brief. I wanted to address this and fall on the sword and apologize to the Court for not having raised this in the brief and addressed it. There's two quick responses, one legal, one factual. Legally, it's irrelevant because, as this Court has held, the BIA has, quote, no jurisdiction to adjudicate constitutional issues. That case was Begez, B-A-G-U-E-S, at 779 F. 2nd, 483 at 484. A similar case is entitled Rabiu, R-A-B-I-U, at 41 F. 3rd, 882. For that reason, there would simply be no need to raise it before the BIA if the BIA cannot rule upon it. Let me ask you another question that wasn't in the brief. The Petitioner was granted voluntary departure. Was there a timely stay motion of the voluntary departure within the period of time, the time that she would have had to depart, or was, was Your Honor, the Chapman School of Law was appointed when there was a prior counsel who was still on the, before the Ninth Circuit, as counsel for Petitioner. In the Ninth Circuit, it appears from the read of the docket, had issued a stay of deportation pending the prior attorney getting admitted to this Court and dealing with an OSC and some sanctions. That appears to have never happened, which is why the Chapman University School of Law was appointed through the pro bono program. So my understanding is that that stay which was issued by a motion of the chapman school of law was appointed through the pro bono program. Now, returning to the procedural due process issue, the bottom line argument here is that Petitioner was denied a full and fair hearing on cancellation of removal because the IJ, in effect, failed to consider at all what this Court has held may be the single most important factor in the hardship analysis, and that is the impact of separation of a family member from other family members. Where do you get that? Why do you say he didn't consider it? Wasn't this presented to him and didn't he talk about it? The IJ didn't consider it, Your Honor, because the IJ expressly said the only iterations of hardship raised are economic and educational, apparently concluding that was the set universe within which the IJ could analyze it, because previously the IJ had said there's a tenuous bond here between U.S. citizens' son and permanent resident father, because father doesn't provide enough support to his son, and because his son is two, and for some other factors. So the judge, in effect ---- Yes, I mean, he may not have liked how he did it, but it's not really accurate to say he didn't consider it. The judge appears to have believed it was something that couldn't be considered at all or was not at issue, but has immediately then said the only arguments of hardship before this Court are the educational and economic impact. Well, that's the only expressed hardship. In other words, the only one that the two ---- as I see it, the IJ was saying the only one that they specifically mentioned, but the IJ listened to the testimony about family relationships and impact. Indeed, Your Honor, and concluded that because of the nature of this family, there was a tenuous relationship between the two, which is why Petitioner has come to this Court under the Reyes case. Well, maybe you don't like that expression either, but that's a far cry from saying it wasn't considered. You may not like the way he described it. Well, it appears, given the next sentence, that that prior iteration with respect to the family relationship was factored out of the equation because of the conclusion that there was a tenuous link and a tenuous familial bond between father and son. Well, given that the father says, I'm not going to keep the kid, I'm not going to pay child support, I'm not going to go to Mexico, that seems kind of tenuous, doesn't it? I don't believe it is tenuous, Your Honor. Maybe you don't like that description either, but it certainly doesn't say that the IJ didn't consider it. It's certainly a nontraditional family. There's no doubt about that. And the IJ certainly concluded that there's a tenuous link. The conclusion coming from the record, as Petitioner contends, is that the IJ, having concluded this isn't a traditional family or this is too tenuous a link, put that to the side and then went forward with a hardship analysis only considering education and economic impact. And it's that conclusion that there's a tenuous link because of the nature of this family's relationship that plugs this case into the constellation of Reyes, Your Honors, where, admittedly, there, the IJ's comments were egregious and significantly more egregious than the comments here. But the issue in Reyes was, as well as being a bias evidence from the record and the IJ's inappropriate comments, that bias, as the Reyes court held, precluded the IJ from considering or weighing the impact of the family. And that's the linchpin rationale that we contend is relevant here and puts this case within that constellation, Your Honors. I would also note that with respect to what is in the record in terms of this family relationship, the father sees his son nearly daily. He provides medical insurance for the son. He provides emotional support for the son. And the son, it appears undisputed from the record, loves his father and by all accounts would suffer significantly if he was removed from his father. Those were uncontroverted. There was no adverse credibility finding made on those facts either. And so, in the record, which is the predicate bedrock for why the tenuous conclusion is completely unfounded and appears to just simply be a way to divert the issue and then focus on the other two issues and come to the conclusion, the gist of it is, is if within some legal test there's a critical factor A and that critical factor A isn't properly analyzed, there can be no full and fair hearing. This then leads to the substantive due process argument, which we will address very briefly, and that is that this is a very atypical fact pattern, undoubtedly. We haven't in our research found any case on point, and the argument made is a very narrow one. What Petitioner asks is that on these very narrow facts, where you have a U.S.-born child who's leaving with the illegal alien mother, a father who's not married, who oddly is a permanent resident here and is able to remain and has another family, in those unique factual circumstances, the fundamental right to the preservation of family integrity should be found to apply and that there is no compelling government interest in exercising discretion to separate this family and sever the boy's ties to his father, just as in Moore, for instance, there was no compelling interest. Any time the expulsion of an alien parent results in the separation of a child from one of the parents, then that can't happen? You've got a constitutional violation every time? Every time on these facts, yes. There may well be circumstances where, you know, there happens to be a parent here who's never had any part of this family at all, and in that circumstance, indeed, the Court may be able to conclude that this isn't even a family unit, so it doesn't trigger the constitutional right, but on these facts, yes, that is our contention, Your Honor. Did you want to reserve some time for rebuttal? Thank you, Your Honor. I will do that. Thank you very much. Good morning. Good morning, sir. In the police court, my name is Steve Flynn. I represent the government respondent, the Attorney General. As a preliminary matter, the discussion that was just ongoing highlights the discretionary nature of this determination. Petitioner disagrees, one, with the evaluation that the father had a tenuous relationship with his son. Well, that is, by its very nature, discretionary. They disagree with it, but the Court lacks jurisdiction to consider that. The immigration judge's determination that it was a, quote, unquote, rather tenuous relationship was not based on any moral judgment on the composition of the family. As the immigration judge stated, it was, quote, particularly based on Javier's lack of responsibility for Daniel's financial and emotional future if he departs to Mexico with his mother. Basically, Javier, the father, bond with both Petitioner and his son Daniel is strictly one of convenience. He is only willing to be a part of Petitioner and Daniel's lives so long as they're in the neighborhood. If they're down in Mexico, then that ends his responsibility. Turning to the procedural due process claim that Petitioner is correct that waiver and exhaustion do come into effect here. Why? Because it's a procedural, and as this Court has held, procedural errors that the board can correct, Petitioner must exhaust before the, exhaust that issue before the board, before this Court will have jurisdiction to consider it. In this case, the separation of the family, the separation of Daniel from his father, that's conspicuously absent from both the notice of appeal and the ensuing brief to the board. All they addressed in those matters were Petitioner's inability to find work in Mexico and difficulty in adjusting life in Mexico, life down there. There's absolutely no mention of the family unit and Daniel's separation from his father. If Petitioner had in fact presented the claim that she presently presents to this, to this Court, she presented that to the board, and the board found that there was merit to that claim, they could have simply ordered a rehearing. She didn't present it, so therefore she hasn't exhausted her administrative remedies, at least in regard to the procedural due process claim. Turning to the substantive due process issue and this fundamental family right, Petitioner is here illegally. While she may have a right to preserve her family, and she certainly does have that right. Exhaustion point, we've been having some interesting arguments about how the exhaustion fits with the streamlining, because if we're reviewing the IJ's decision, because the BIA summarily affirmed, and Petitioner did present those arguments to the IJ, which is the final determination that we're reviewing. So I don't see how your exhaustion argument stands. Well, there's still an intermediate step before, a required intermediate step before they can come to this Court, and that's an appeal to the board. Now, if she'd raised this claim to the board, the board possibly may not have streamlined if they found merit to her claim, and then could have remanded the case to the immigration judge for rehearing. Is that one of the grounds for declining to streamline in the statute? Well, if there's, no, that's not, the grounds for streamlining is no novel legal concept is raised, it's controlled by precedent, et cetera. If they had raised, claimed they're raising here now before the board. It's not a novel claim, and we've had those claims before, procedural due process based on the IJ not considering something. I just disagree with your exhaustion. I think there's, if we're looking at the final, if we're reviewing the final agency determination, all the issues were certainly presented to that agency. But in order to preserve that issue before this Court, they have to raise it before the board. Do they not? Seems rather futile, doesn't it? Not necessarily. Not if the board determines that the claim has merit, because then they order a rehearing. But this claim right now was never presented to the board. The board was never given an opportunity to rule on this claim. And because, for example, if she had raised this claim, the board may not have streamlined if they had found merit to this claim. Yeah, but you just said that that isn't, I'm not going to go around and around with you because we're going to use up all your time, but you just said that's not one of the grounds for streamlining. No, ma'am, what I, what I said was the claims that were raised, there was nothing novel about it. Hardship in Mexico, inability to find a job, et cetera, basically it was an abuse of discretion argument. There was nothing novel about that, so the board accordingly streamlined. That was all I was saying, ma'am. Turning to the substantive due process, while Petitioner may have the right to preserve her family, she doesn't have the right to preserve that family within the United States. Courts have long recognized from the Supreme Court, this Court, the sovereign power of the government to exclude and expel aliens. And as the Supreme Court said in Shaughnessy, that power is largely immune from judicial control. Regardless of how Petitioner frames her argument, she is essentially stating that she has a right to cancellation relief in order to, quote, unquote, preserve her family. But as set forth in our brief, cancellation removal is discretionary. And as this Court said in Munoz, there can be no substantive due process right to discretionary relief. And once again, Petitioner is alleging that she has unique circumstances. However, in Munoz, the Court specifically said, notwithstanding Munoz's unique circumstances, he has no substantive due process right to stay in the United States. Now, all the government did in this case was enforce and apply the immigration laws of this country. And despite the fact that Petitioner says, well, it's the government that's separating our family, that argument glosses over Petitioner and Javier's role in all of this, the choices they made and will make. For example, as far as preserving the family, Javier could accompany both Petitioner and his son, Daniel, down to Mexico if he so chose. At any time that Javier and Petitioner were together for the five years, he could have married her, applied for a visa, and she would be here lawfully. In fact, he could still marry her, apply for a visa, and obtain a waiver for her readmission. He did not do – the two of them did not do any of this. And now they're crying foul because they can't be together on the terms that they want. That's essentially all I have. If the Court has anything else for me. Roberts. Thank you very much, sir. Thank you, sir. You get the last word. I'm pledging allegiance to Judge Albasert of the Third Circuit, who teaches that rebuttal should be to rebut, not repeat. We would submit unless the Court has anything further. Thank you, counsel. Thank you. And we also thank you for taking the case on a pro bono basis. I appreciate that. Nice job. Thank you. Gentlemen, the case just argued is submitted. Albasert's a good teacher. 0-3-5-0-4-6-5 and 5-0-5-1-5, United States v. Signs. Each side has 10 minutes.
judges: T G Nelson, Silverman, Wardlaw